**FILED**

JAN 1 9 2006

NANCY MAYER WHITTINGTON, **CLERK**
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK HOBRATSCHK, Plaintiff
31790 US Hwy
Apt. 245
PALM HARBOR, FL · 34684

    )
    )
    )
    )
    )

**Civil No.**

**LOUIS MOUNT, an individual in his
personal capacity**

    )
    )
    )

CASE NUMBER  1:06CV00118

JUDGE: Richard J. Leon

**WENDELL SHINGLER, in his individual
and official capacity**

    )
    )
    )

DECK TYPE: Civil Rights (non-employme

DATE STAMP: 01/ /2006

**MARK MCCLELLAN, in his individual
and official capacity
Defendants**

    )
    )
    )
    )

*JURY ACTION*

---

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Mark Hobratschk, representing himself *pro se*, for his Complaint against the above-named Defendants, hereby seeks compensatory, punitive, declaratory, and injunctive relief for their tortious and felony misconduct set forth as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction in this matter against the Federal agency Defendants pursuant to 5 U.S.C. § 702 (judicial review of Federal agency actions under the Administrative Procedure Act), 28 U.S.C. § 1332 (diversity of citizenship), 28 U.S.C. § 1346 (U.S. defendant), 28 U.S.C. § 1361 (original jurisdiction for actions to compel Federal officers and agencies to perform duty owed Plaintiff), and 28 U.S.C. § 2201 (declaratory judgments.)

2.    This Court likewise has jurisdiction in this matter against Defendant Mount in his personal capacity pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1970) and the First, Fourth, and Fourteenth Amendments to the Constitution.

Sovereign immunity does not bar suit where a Federal officer acted beyond his or her statutory powers, and knowingly violated Constitutional rights, as Plaintiff sets forth in this Complaint.

3.      The Federal Tort Claims Act (FTCA) at 28 U.S.C. §2680 *et seq.* does not bar jurisdiction as to any of the Defendants as it is inapplicable to the intentional torts set forth herein, as well as for suits brought to compel Federal officers and agencies to perform duties owed to plaintiffs.

4.      Venue is appropriate in this district pursuant to 28 U.S.C. §1391 as the headquarters for the Federal agency defendants lie within the District of Columbia, Plaintiff continues to be injured by the bar against his attending meetings within the District of Columbia, and the tortious and criminal actions herein were authorized or taken by entities within the District of Columbia.

5.      Certain relief requested in this Complaint is also specifically authorized by 28 U.S.C. §2201 (declaratory judgment) and 28 U.S.C. § 2202 (injunctive relief).

6.      Plaintiff demands a trial by jury as to all Defendants.

### PARTIES

7.      Plaintiff is a U.S. citizen, 38 years old, permanent resident of the state of Florida, and not a member of the military.

8.      Plaintiff is also a spinal cord injury survivor whose resultant physical condition meets the definition of disability under the Rehabilitation Act of 1973 [29 U.S.C. §706 (8)(B) and §706 (20)], the Americans with Disabilities Act (ADA) of 1990 [42 U.S.C. §12101 (2)], and the Social Security Administration (SSA) ruling 96-9p.

9.      Defendant Louis Michael Mount is a corrupt employee of the Federal Protective Service (FPS) working at the Centers for Medicare and Medicaid Services (CMS) in Baltimore, MD.

10.     Defendant Mount resides in Glen Burnie, MD, within 40 miles of Washington, DC.

11.     Defendant Mount is over the age of 18, and not a member of the US military.

12.     Defendant Mount is personally liable for willful violations of individual civil liberties outside the scope of his employment.

13.     Defendant Mount is formerly a police officer for the Philadelphia, PA police department.

14.     As a Philadelphia police officer, Defendant Mount was present at the scene of the unlawful killings of 11 civil rights protestors by his peers on or about May 13, 1985.

15.     Defendant Mount and his fellow officers were successfully sued for over $30 million by families of the civil rights protestors willfully incinerated by a firebomb dropped on their apartment by Philadelphia police officers.

16.     Defendant Mount testified at a special investigative commission that he had direct advance knowledge of the planned firebombing and took no action to oppose or prevent it.

17.     During said testimony, Defendant Mount attempted to support the unlawful conduct of his fellow officers in the killing of the 11 men, women, and children.

18.     Defendant Shingler is Administrator of the Federal Protective Service (FPS), an agency within the executive branch of the U.S. government.  FPS is under the jurisdiction of the Department of Homeland Security (DHS).

19.     FPS is headquartered in Washington, DC.

20.     FPS is responsible for the conduct of all employees and contractors within the capacity of their employment, including FPS officials operating on CMS property.

21.     FPS officers have repeatedly been found to fabricate evidence against innocent parties.

22.     FPS officers Haire, Taoy, and Jackson were sentenced in 2005 to 12-18 months in Federal prison for filing reports falsely claiming an assault by a motorist.

23.     Defendant McClellan is Administrator of the Centers for Medicare and Medicaid Services (CMS), an agency within the executive branch of the U.S. Government.  CMS is under

the jurisdiction of the Department of Health and Human Services (HHS), and oversees the administration of Federal health programs such as Medicare and Medicaid.

24.    The CMS headquarters are located in Washington, DC.

25.    CMS is responsible for the conduct of all employees and contractors within the capacity of their employment, including FPS officials operating on CMS property.

26.    CMS security personnel have repeatedly been found to fabricate evidence against innocent parties complaining of CMS misconduct, including three separate incidents involving Plaintiff, CMS security employee John Rudolph, and former CMS employee Douglas Godesky.

## STATEMENT OF FACTS

27.    On January 28, 2005, Plaintiff was served a violation notice for misuse of telephone facilities under Maryland Criminal Code § 3-804 by two FPS officers in Colorado.

28.    The two FPS officers serving the notice refused to provide their names when requested by Plaintiff in person, or upon written demand faxed to FPS that afternoon.

29.    The violation notice was signed by FPS officer Matthew Pinardi.

30.    Officer Pinardi is supervised by Defendant Mount.

31.    Officer Pinardi admitted in a January 28, 2005 telephone conversation with Plaintiff that he issued the notice at the direction and under the supervision of Defendant Mount.

32.    The violation notice cited Plaintiff for faxing a one-page document labeled "PARODY" to FPS employees on January 23, 2005 which parodied Defendant Mount's pattern of criminal misconduct and contempt for civil liberties throughout his career as a law enforcement officer.

33.    FPS likewise complained about Plaintiff copying FPS offices on his January 19, 2005 e-mail to an *Arizona Republic* reporter regarding guilty pleas by two FPS officers in California for

fabricating incident reports, and offering to provide the reporter with documentation of three related incidents in Maryland involving Defendant Mount and other FPS officers.

34.    Officer Pinardi stated in the January 28, 2005 telephone call that these communications violated a "cease and desist" letter he sent to Plaintiff by certified mail on January 10, 2005.

35.    Officer Pinardi's "cease and desist" letter claimed that Plaintiff could not send any communications to FPS protesting or complaining about criminal misconduct by FPS officers.

36.    Officer Pinardi admitted in the January 28, 2005 telephone call that he never bothered to check the certified mail receipt to see if Plaintiff had received the January 10, 2005 letter.

37.    FPS admits that Plaintiff did not receive the January 10, 2005 letter until January 24, 2005, as proved by certified mail return receipt.

38.    After realizing FPS' had made a colossal error in issuing the violation notice, DHS special agent Edward Ryan issued a February 3, 2005 directive barring Plaintiff from sending any complaints of misconduct by FPS personnel to any DHS employee.

39.    Mr. Ryan stated regardless of Federal or state law, DHS now has discretion to determine what complaints of misconduct were proper, and ban any complaints it did not like.

40.    DHS has repeatedly engaged in such McCarthyist abuse of constitutional rights by wrongly banning or charging similar persons seeking redress from government agencies, including persons petitioning the Veterans Administration to reverse a denial of health benefits.

41.    Mr. Ryan stated that Plaintiff's repeated complaints of FPS misconduct since 2001 constituted illegal "harassment."

42.    Plaintiff presented FPS, DHS, and the U.S. Attorney with written documentation that the exact statute under which he has charged could not be applied to public discourse and political

speech, per <u>U.S. v. Popa</u>, 187 F.3d 672 (D.C. Cir. 1999) (no state law can prohibit private

citizens from repeatedly contacting Federal officials to protest or seek redress for misconduct.)

43.      Plaintiff's telephone records further proved that between December 2001 and January

2005 he sent only 14 faxes to FPS.

44.      Plaintiff thus proved that such a limited number of faxes did not come close to satisfying

the elements for telephone harassment under Maryland and Federal case law.

45.      Despite uncontested evidence that FPS officers Mount and Pinardi had grossly violated

Plaintiff's civil rights in issuing a retaliatory charge without any merit, FPS and DHS refused to

dismiss the charge.

46.      The FPS and DHS refusal to dismiss the charge forced Plaintiff to incur significant

telephone, postage, and copying expenses in attempting to obtaining defense counsel, in addition

to severe emotional distress from a wrongful charge.

47.      On March 17, 2005, Assistant U.S. Attorney Michael Leotta finally dismissed the charge.

48.      Mr. Leotta issued a dismissal notice documenting that Officers Mount and Pinardi had

wrongly issued a charge without bothering to check for a certified mail return receipt.

49.      Mr. Leotta further stated to Plaintiff's counsel that the charge was being dismissed

because Mount and Pinardi's attempt to silence public complaints was "not what the [Maryland

telephone harassment] statute is for."

50.      Despite the dismissal, Mr. Ryan and DHS refuse to drop the unconstitutional ban on

Plaintiff contacting DHS and FPS to seek redress for criminal misconduct by their officers.

51.      Plaintiff's complaints stem from criminal misconduct towards Plaintiff by Defendant

Mounts, FPS, and CMS commencing on December 5, 2001 through the present.

52.    On December 5, 2001, Defendants refused to provide Plaintiff reasonable accommodation for his disability by lifting his car hood in order to inspect his vehicle prior to entering CMS.

53.    FPS Officer Jerry Bartgis admitted in a tape-recorded telephone conversation on or about June 21, 2004 that the CMS vehicle inspection policy requires the guard to lift the car hoods for all visitors, and thus CMS' denial was improper. Mr. Bartgis' admission likewise proved CMS and FPS officials lied under oath in claiming no such vehicle inspection policy existed.

54.    Anne Williams, a security contractor for CMS, admits under oath that Plaintiff was refused said accommodation on the stated belief that persons who can walk cannot be disabled.

55.    Defendant Mount refused to provide the accommodation on the stated basis that Plaintiff must be "faking it [disability]." Defendant Mount demonstrated his severe intellectual and professional deficiencies by stating to Plaintiff "where's your wheelchair?" and "everyone wants to be disabled nowadays."

56.    Defendants have criminally retaliated against Plaintiff for filing written complaint on December 6, 2001 regarding Defendants' unlawful refusal of accommodation, including demanding disability sensitivity training for all Federal security personnel.

57.    Defendants admit under oath that unlike the Transportation Security Administration, security personnel at CMS receive no training in accommodating persons with disabilities under security measures imposed after 9-11.

58.    Approximately one week after Plaintiff's December 6, 2001 complaint of misconduct, Defendant Mount retaliated against Plaintiff by issuing three belated summonses and claiming Plaintiff was denied entry because he made "terrorist threats."

59.     Reliance upon fabricated terrorist threats to retaliate against legitimate complaints of misconduct by Federal officials is a well-documented hallmark of Federal agencies under the Bush Administration.

60.     Approximately one week after Plaintiff's December 6, 2001 complaint of misconduct, CMS likewise retaliated against Plaintiff by banning him from entering any CMS property on the basis that he represented a "terrorist threat" to the agency.

61.     Plaintiff was not barred from entering any other Federal agency despite being claimed to be a terrorist threat to Federal employees.

62.     CMS security contractor Eric Chase testified on three separate occasions that he was present during the entire incident with Plaintiff and that at no time did he hear any terrorist threats by any party, nor did he observe any reaction or behavior by his fellow officers that would indicate any threat had been made.

63.     Contractors Chase and Williams admitted under oath that neither Defendant Mount nor any other personnel claimed at the time Plaintiff made any terrorist threats.

64.     Defendant Mount was unable to provide any corroboration of such terrorist threats, as no two officers present at CMS on December 5, 2001 could ever agree when or where such terrorist threats occurred, or what was stated.

65.     Plaintiff was never charged with making any terrorist threat.

66.     Federal magistrate Beth Gesner repeatedly issued rulings stating that no credible evidence was ever provided of any terrorist threat, nor was any such claim by Mount ever considered in adjudicating Mount's summonses.

67.     Despite the lack of any credible basis for claiming a terrorist threat, Plaintiff remains unlawfully banned from CMS without opportunity for hearing or appeal.

68.    The unlawful ban deprives Plaintiff of a fundamental right to earn a livelihood in his chosen profession.

69.    Plaintiff was forced to leave his Director of Government Relations position and enter law school in July 2002 because such position required his presence at CMS.

70.    Since August 31, 2005, Plaintiff has obtained new employment in healthcare advocacy likewise requiring his presence at public meetings at CMS.

71.    Between March 2002 and July 2004, CMS is documented to have received seven written demands by Plaintiff to remove the ban, and at a minimum provide the procedural Constitutional due process required prior to deprivation of any fundamental right.

72.    On February 20, 2004, the CMS Administrator received from Plaintiff via certified mail a 14-page letter dated February 15, 2004 providing over 60 pages of deposition transcripts and other exhibits documenting fabrication of witness statements and other felony misconduct by CMS security personnel, not limited to Defendant Mount, Francis Jones, Phil Pickering, Louis Mount, and Anne Williams.

73.    Plaintiff's documentation proved CMS lacked any rational basis for the ban as there was no credible evidence of any terrorist threat, and those alleging such threats had repeatedly been proven to have fabricated witness statements and otherwise lied under oath.

74.    Between February and July 2004, Plaintiff furnished the CMS Administrator other evidence documenting that CMS security personnel had fabricated "terrorist threats" in two other incidents involving CMS employees Douglas Godesky and John Rudolph.

75.    Plaintiff provided written evidence that Mr. Godesky and Mr. Rudolph were charged with the same offenses as Plaintiff after complaining of mistreatment by CMS security contractors,

yet had their charges dropped after documentation that the contractors had fabricated witness reports against them.

76.    Mr. Rudolph is a CMS security employee who acknowledged in internal CMS reports that CMS security contractors fabricate witness statements against complainants.

77.    Mr. Rudolph was not banned from entering CMS despite claims that he defied directives not to bring a military-style hunting knife onto CMS property in February 2003.

78.    Mr. Godesky was reinstated in June 2004 to his CMS employment by a Federal arbitrator who concluded that not only had Mr. Godesky not made the alleged terrorist threats, as it contradicted the hugs he received from security guards on the date and time in question.

79.    Mr. Godesky is not banned from entering CMS despite claims that he made terrorist threats against security guards who refused to allow him to bring two loaded pistols into CMS.

80.    Defendants McClellan and Shingler have refused to respond to any of Plaintiff's demands for a hearing, due process, corrective action, disability sensitivity training, or written apology.

81.    FPS has subsequently been shown to repeatedly fabricate criminal allegations against private citizens. This is not limited to the 2005 conviction and 12-18 month Federal prison sentences for FPS officers Steven Jackson, Peter Taoy, and John Haire after videotape proved they fabricated police reports that falsely claimed Taoy and Haire were assaulted by a motorist.

### COUNT ONE—Malicious Prosecution
### Defendants Mount and Shingler

82.    The factual allegations of paragraphs 1-81 above are incorporated by reference as though fully stated here in.

83.    As set forth above, Defendant Mount did maliciously and intentionally cause the commencement of a criminal proceeding against Plaintiff without any probable case.

84.    As set forth above, Defendant Shingler did refuse to dismiss the charge when Plaintiff brought forward documentation that Defendant Mount's charge against Plaintiff lacked probable cause and was commenced solely retaliate against Plaintiff for his public criticism of FPS.

85.    As set forth above, the U.S. Attorney's Office dismissed the charge against Plaintiff on the basis that Defendants lacked probable cause because the Maryland telephone harassment statute did not apply to Plaintiff's public criticism, which is constitutionally-protected speech under all Federal or state harassment laws.

86.    Defendants knew at the time of charge that the Maryland telephone harassment statute did not apply to Plaintiff's constitutionally-protected speech and that their charge lacked merit.

87.    Defendant Mount initiated the charge solely to threaten and intimidate Plaintiff for engaging in constitutionally-protected speech by exposing Mount and FPS' fraudulent conduct.

88.    Defendant Mount has engaged in an analogous pattern of retaliation against Plaintiff, as he previously initiated fabricated petty offense charges against Plaintiff in December 2001 only after Plaintiff filed the above-referenced written complaint to CMS demanding disciplinary action against Mount.

89.    As set forth above, FPS and DHS have engaged in an analogous pattern of retaliation against third parties exercising their constitutional rights, including the convictions of three FPS officers in 2005 for fabricating criminal charges.

90.    As Defendant knew the statute did not apply to Plaintiff's communications, Defendant thus lacked requisite probable cause to file a charge against Plaintiff.

91.    As Defendant acted solely out of evil motive in seeking to retaliate against public criticism, Defendant likewise lacked requisite probable cause to file a charge against Plaintiff.

92.     As a result of Defendants malicious prosecution, Plaintiff was forced to incur significant telephone, postage, and reproduction expenses in order to obtain proper counsel.

93.     As a result of Defendants malicious prosecution, Plaintiff did suffer pain, embarrassment, humiliation, reputational damage, and severe emotional distress that greatly exacerbated his physical infirmities from a spinal cord disability.

94.     Plaintiff has no adequate remedy at law.

### COUNT TWO-Abuse of Process
### Defendants Mount and Shingler

95.     The factual allegations of paragraphs 1-94 above are incorporated by reference as though fully stated here in.

96.     In addition to malicious prosecution, the preceding paragraphs demonstrate Defendants Mount and Shingler did engage in tortious abuse of process by misusing the judicial process for the improper motive of retaliation and intimidation.

97.     The abuse of process by Defendants did cause actual damages to Plaintiff not limited to those set forth in paragraphs 92-93.

98.     Plaintiff has no adequate remedy at law.

### COUNT THREE-Violation of Procedural and Substantive Constitutional Due Process
### Defendants McClellan and Shingler

99.     The factual allegations of paragraphs 1-98 above are incorporated by reference as though fully stated herein.

100.     CMS continues to ban Plaintiff from entering CMS property despite documentation that CMS acted with evil motive in fabricating "terrorist threats" that formed its stated rational basis for said ban.

101.   Citizens have the fundamental right to earn a livelihood in the profession of their choosing.

102.   The CMS ban on Plaintiff violates this fundamental right as he must attending meetings at CMS in his current employment position representing persons with chronic blood disorders.

103.   The CMS ban on Plaintiff likewise violates this fundamental right as it was issued without any opportunity for appeal or hearing, in violation of procedural due process guaranteed by the Fifth Amendment to the U.S. Constitution.

104.   CMS lacks any rational basis for continuing the ban as (a) Plaintiff never been charged with any "terrorist threats", (b) no credible evidence of any "terrorist threats" has ever been provided, and (c) no judicial, quasi-judicial, or administrative forum has ever heard or made any finding regarding any alleged "terrorist threats."

105.   CMS initially attempted to ban Plaintiff from communicating with CMS employees, and directed CMS employees in writing on or about December 14, 2001 not to speak with or "do any business" with Plaintiff.

106.   The attempt to ban Plaintiff from communicating with CMS employees was invalidated by U.S. District Court Judge Benson Everett Legg on or about March 19, 2003.

107.   CMS attempt to unlawfully ban Plaintiff from communicating with CMS employees further demonstrates their evil motive in issuing the ban and lack of any rational basis thereof.

108.   DHS' analogous February 3, 2005 attempt to bar Plaintiff from communicating with DHS employees regarding criminal misconduct by FPS officers is likewise unlawful and demonstrates their lack of rational basis for issuing such ban.

109.    The failure of CMS and FPS to even respond to at least seven of Plaintiff's documented requests for constitutional due process violates the Administrative Procedures Act (set forth in Count 5) and thus further demonstrates their evil retaliatory motive and lack of any rational basis for the ban.

110.    The failure of CMS and FPS to comply with the Equal Protection Clause (set forth in Count Four) in treating similarly situated cases alike further demonstrates their evil retaliatory motive and lack of any rational basis for the ban.

111.    The failure of CMS and FPS to provide constitutional due process has severely injured Plaintiff, not limited to those damages set forth in paragraphs 92-93.

112.    Defendants utter disrespect for the law and established civil liberties documented herein further demonstrates their lack of rational basis for the ban.

113.    Defendants continued reliance on perjury and fabricated allegations to childishly retaliate against complainants in McCarthyist fashion further demonstrates lack of rational basis for their bans. Deprivations of fundamental rights cannot rationally be based on proven fabrications.

114.    Plaintiff has no adequate remedy at law.

### COUNT FOUR-Violation of the Equal Protection Clause
### Defendants McClellan and Shingler

115.    The factual allegations of paragraphs 1-114 above are incorporated by reference as though fully stated herein.

116.    As set forth above, CMS employees Douglas Godesky and John Rudolph were charged with precisely the same petty offenses as Plaintiff.

117.    As set forth above, these charges were dismissed by the U.S. Attorney's office without any explanation as to the basis for dismissal.

118.   As set forth above, John Rudolph was not banned from entering CMS property, despite carrying a military weapon into CMS after being directed not to do so.

119.   As set forth above, a Federal arbitrator ruled in June 2004 that the ban on entering CMS property issued against Douglas Godesky was unlawful and must be withdrawn, even though Godesky carried two loaded firearms into the CMS building and was alleged to have made terrorist threats against CMS employees.

120.   The conduct in which Rudolph and Godesky engaged was infinitely more severe than Plaintiff's written complaints against CMS' failure to provide reasonable accommodation.

121.   The conduct in which Rudolph and Godesky were falsely alleged to have engaged was likewise far more severe than the ambigious and inconsistent allegations of "terrorist threats" fabricated against Plaintiff.

122.   Despite the far lower severity of conduct ascribed to Plaintiff, CMS employees Godesky and Rudolph are not banned from CMS property, while Plaintiff remains banned from CMS property.

123.   This irrationally differential treatment of Plaintiff's conduct compared to Godesky and Rudolph demonstrates that CMS and FPS violated the Equal Protection Clause under the Fifth Amendment of the U.S. Constitution.

124.   As CMS and FPS are documented to have acted with evil motive in fabricating allegations to retaliate for Plaintiff's exercise of protected speech, neither CMS or FPS can articulate any rational basis for the continued ban on Plaintiff.

125.   Plaintiff continues to suffer injury and actual damage to his personal and professional interests as a result of Defendant's constitutional violations, not limited to those set forth in paragraphs 92-93.

126.    Plaintiff has no adequate remedy at law.

## COUNT FIVE-Violation of the Administrative Procedures Act
### Defendants McClellan and Shingler

127.    The factual allegations of paragraphs 1-126 above are incorporated by reference as though fully stated herein.

128.    In refusing to even respond to the numerous demands by Plaintiff and his representatives for constitutional due process and corrective action, Defendants violated Section 555(e) of the Administrative Procedures Act.

129.    As set forth above, Plaintiff documented that both CMS and FPS have received over seven requests for agency action via certified mail or facsimile transmission and refused to respond to Plaintiff in any manner.

130.    Pursuant to 5 U.S.C. § 555(e), when agency action is requested by citizens, Federal agencies must respond with an explanation of why they are or are not taking the requested action.

131.    As Defendants McClellan and Shingler have no legitimate defense for their agency's criminal and tortious misconduct, each Defendants attempts to pretend Plaintiff's documentation of misconduct does not exist by ignoring his demands for agency action thus should be declared by this court to be in violation of 5 U.S.C. § 555(e).

132.    This violation of the APA by Defendants McClellan and Shingler is *per se* evidence that the bans on Plaintiff entering CMS or contacting DHS employees lack any rational basis.

133.    Plaintiff continues to suffer injury and actual damage to his personal and professional interests as a result of Defendant's constitutional violations, not limited to those set forth in paragraphs 92-93.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court provide the following orders and judgments against the Defendants, both jointly and severally:

A.    To enter judgment in favor of the Plaintiff on all Counts set forth in this Complaint.

B.    To award Plaintiff compensatory and actual damages for all costs incurred in defending himself from the malicious and unfounded charge filed by Defendants Mount and FPS on January 28, 2005, including all costs for postage, telephone, and travel expenses necessary to consult with or secure counsel.

C.    To award Plaintiff compensatory and actual damages for the pain, embarrassment, humiliation, reputational damage, public contempt, and severe emotional distress wrought upon an already physically disabled individual due to the prospective damage to his academic and professional opportunities that could be inflicted by a wrongful criminal charge.

D.    To issue a permanent injunction prohibiting the Defendants McClellan and Shingler from banning Plaintiff from entering CMS property for no rational basis, or at a minimum provide the procedural due process required for deprivation of a fundamental constitutional right.

E.    To issue a permanent injunction prohibiting FPS from banning Plaintiff from exercising his civil right to engage in protected public discourse by contacting any FPS or Federal official to protest or complain about misconduct by FPS officers.

F.    To issue a permanent injunction barring Defendant Mount from any and all employment in a law enforcement capacity due to his repeated corrupt behavior and disrespect for the law.

G.    To issue a referral to the U.S. Attorney General for criminal prosecution of Defendant Mount warranting the same 12-18 Federal prison sentence imposed upon his FPS peers for fabricating police reports.

H.    To issue a permanent injunction directing all named Defendants to refrain from maliciously prosecuting, retaliating against, defaming or otherwise threatening him for protesting their criminal misconduct.

I.    To grant Plaintiff a permanent injunction enjoining the Defendants and any officer, agent, successors, employee, contractor, attorney, or other representative of the Defendants, including those acting at their direction, from (i) engaging in any of the actions specified in this Complaint, (ii) engaging in any policy or practice that unlawfully discriminates against persons with disabilities according to existing Federal laws and regulations, and (iii) intimidating, threatening, coercing, or retaliating against the Plaintiff, or interfering with Plaintiff's employment, vocation, or professional business relations.

J.    Because Defendants both jointly and separately engaged in outrageous conduct and acted with evil motive and callous indifference for the Plaintiff's established civil rights, Plaintiff seeks punitive damages against for an amount the Court deems proper to ensure all Defendants immediately and permanently preserve and respect the civil rights of persons with disabilities, and cease retaliation against those who complain of civil rights violations.

Defendants are not good persons who simply "went a little too far" as previously intimated by their peers, but are rather mentally deficient bigots who act with hatred and intolerance towards persons they are incapable of understanding.  As they have the ability not merely to destroy life but also reputations, they possess far greater threat of harm to law-abiding citizens than any terrorist, and should be treated by this and all courts accordingly with the most severe punishment that can be imposed for their tortious acts and felony crimes.

True justice would dictate that vile bigots such as Defendant Mount who are even indirectly responsible for the burning of infant girls solely out of ego should never be allowed to

again freely set foot in civilized society. Based on his ignorant statements set forth in paragraph 55, it is clear that he lacks the limited intelligence, professionalism, or emotional stability necessary to be a law enforcement officer. Defendant Mount is as dumb and ignorant an individual as one can ever encounter.

As the court system is seldom capable of providing anything approaching true justice, Plaintiff urges the imposition of punitive damages as the only means of curbing the "incestuous nest of corruption" that reporters have documented Mount and his infantile FPS cronies so adoringly propagate. Since a $30 million judgment against his department was insufficient to abate his rampant fabrication and bigotry, Plaintiff seeks that punitive damages not merely be levied against the agency defendants, but be likewise paid out of Mount's own pocketbook.

K.    To direct the Defendants CMS and FPS to destroy all documentation containing any reference to the malicious and meritless allegations against Plaintiff, to issue a written statement to all CMS employees that the Plaintiff did not engage in any terrorist threat or other unlawful or malicious conduct towards CMS or any CMS contractor or employee, and to refrain from any disclosure (outside of the judicial process) related to the material facts of this case.

L.    To direct the Defendants CMS and FPS to provide compulsory sensitivity training to all security employees and contractors related to the special needs of persons with disabilities.

M.    To issue a declaratory judgment pursuant to 28 U.S.C. § 2201 finding that refusal of Defendants McClellan and Shingler to respond to requests for constitutional due process violates 5 U.S.C. § 555(e) and issue a concurrent order compelling Defendants to perform this statutory duty (as the Court is authorized to do pursuant to 28 U.S.C. § 1361.)

N.    To retain jurisdiction over this action to assure full compliance with the orders of this Court and with applicable Federal and state laws.

Respectfully submitted this 8th day of January, 2005.


Mark Hobratschk, MPA, JD, Plaintiff
31790 US Highway 19 North, Apt. 245
Palm Harbor, FL  34684