**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**RECEIVED**

SEP 1 8 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| MARK HOBRATSCHK | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 1:06CV00118 RJL |
| | ) | |
| LOUIS MOUNT, et al. | ) | |
| Defendants | ) | |

## REPLY TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, representing himself *pro se*, hereby responds to the Defendants' Motion to Dismiss (hereinafter "Motion".)

Defendants' Motion is merely the standard template used by government attorneys for dismissal under F.R.C.P. Rule 12(b)(6). Defendants apparently did not read the Complaint in any detail, as their bases for dismissal do not accurately recite or relate to Plaintiff's allegations. Instead, they attempt to rehash arguments for dismissal that failed in prior litigation.

Furthermore, Defendants attempt to dispute facts and evidence set forth in Plaintiff's Complaint, which is the purpose of discovery. Hence, their arguments are premature and not relevant to a motion to dismiss.

The legal standard is that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). As detailed below, all of Plaintiff's allegations support established and cognizable claims for relief, if the facts are as Plaintiff alleges them to be. Plaintiff is not the average *pro se* litigant as he has represented clients as a student attorney in his law school's civil rights clinic, and thus his Complaint competently set forth facts matching the elements of the offenses. Therefore, per

Gibson, dismissal under F.R.C.P. Rule 12(b)(6) is improper and premature as discovery is required to resolve the merit of Plaintiff's allegations, which set forth clear claims of relief.

## I.    SUMMARY OF ARGUMENT

Plaintiff's Reply shows that his Complaint specifically pled facts showing that:

A.    Actions alleged of Defendants Mount and Shingler meet the elements for malicious prosecution (Count 1) and are not entitled to immunity since Defendants <u>lacked any probable cause</u> to file a telephone harassment charge against Plaintiff because:

      1.    The charge was dismissed since Plaintiff's actions failed to meet the elements for telephone harassment under Maryland law.

      2.    Defendants admit in a tape-recorded call that they failed to check whether Plaintiff received the requisite "cease and desist" letter prior to filing the charge.

      3.    The content of the supposedly offending communication represents protected speech under the cited statute, thus probable cause can never attach.

      4.    Defendants' actions amount to criminal extortion by threatening to harm a person solely for the exercise of protected speech, in violation of the Federal Hobbs Act.  Probable cause can never attach to criminal acts by Federal officials.

B.    Actions alleged of Defendants Mount and Shingler meet the elements of abuse of process (Count 2), because Plaintiff's facts show they abused the judicial process for personal retaliation/intimidation and absence of probable cause is <u>not</u> required.

C.    Actions alleged of Defendants McClellan and Shingler in their official capacity does violate Plaintiff's rights to constitutional due process (both procedural and substantive) under Count 3 and equal protection under Count 4 because:

      1.    Plaintiff pled that he has a severe physical condition meeting all Federal

definitions of disability that provides him a both a liberty and property right under Federal disability law to receive the reasonable accommodation necessary to access Federal buildings that were denied him by Defendants.

2.      Plaintiff pled that he works in a job requiring access to CMS.

3.      Plaintiff has the right to equivalent due process given to other persons Plaintiff cited in substantially similar circumstances who did not prevail in any judicial or quasi-judicial proceeding.

D.      Plaintiff's Complaint documented over seven written demands for constitutional due process, to which Defendants McClellan and Shingler refused to respond in their official capacity, thereby violating Section 555(e) of the Administrative Procedures Act (APA).

E.      The APA does apply to actions Plaintiff alleged the Defendants McClellan and Shingler took in their official capacity.

F.      Plaintiff's Complaint is not a "collateral attack" on prior court rulings relating to Count 3, because Plaintiff presents <u>new matters</u> that are ripe for controversy. Not only have two critical factors changed rendering the matter now ripe, but Defendants January 2005 efforts to ban Plaintiff from communicating with Federal employees was not previously litigated.

G.      The Maryland District Court already held Plaintiff exhausted all administrative remedies, because the CMS ban in 2001 was final agency action for which <u>no remedies were available</u>. Furthermore, the Federal Tort Claims Act (FTCA) does not apply to Counts 3-5, which are not claims for money damages.

H.      Immunity under the FTCA is not available to official capacity Defendants under Counts 1-2 for lack of notice, as Plaintiff pled that Defendants McClellan and Shingler (and the

U.S. Attorney) received written notice of these claims in their official capacities over 10 months prior to filing the Complaint.

I.      Sovereign immunity is not available to individual Defendants under Counts 1-2, as they acted with evil motive and for the unlawful purpose of retaliation, which is outside the scope of their official duties and willfully in violation of Plaintiff's legal rights.

J.      Sovereign immunity is not available as to official capacity Defendants under Counts 3-5 because judicial review of final agency action is authorized by Federal law and Plaintiff seeks non-monetary relief.

K.      Jurisdiction and venue lie within this Court as the actions set forth by Plaintiff were all taken or authorized by Federal agency officials in Washington, DC, bars Plaintiff from entering agencies in Washington, DC, or are proper under the joinder provisions of the F.R.C.P. since the majority of Defendants and witnesses are within Washington, DC.  None of these facts are contested by Defendants.

## II.    STATEMENT OF FACTS

Plaintiff is a long-time healthcare lobbyist and disability advocate who was and still is required to meet with officials at the Centers for Medicare and Medicaid Services (CMS) as part of his job.  He also suffers from a severely crippling genetic disorder of the spine that requires minimal accommodation under post 9-11 security measures—accommodation that had always been politely granted until December 5, 2001 when poorly-trained CMS contractors inexplicably refused to accommodate Plaintiff's disability after erroneously insisting he was not disabled.

It was this refusal to comply with Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794 *et seq.*), **admitted mocking** of Plaintiff's disability, and subsequent unlawful retaliation against his written complaints of mistreatment that are the genesis of the on-going

dispute between the parties. However, the direct cause of this litigation is the Defendants'
unlawful January 2005 retaliation against Plaintiff for demanding the criminal prosecution of
officials who fabricated allegations against Plaintiff in order to cover-up for their colossal
blunder in insisting that he could not possibly be disabled.

A.    Plaintiff was denied reasonable accommodation for his disability by CMS

Plaintiff was refused reasonable accommodation for his disability by contract security
guards at CMS. Prior depositions proved these guards received **no training** in how to
accommodate persons with disabilities under new vehicle inspection requirements established
after 9-11. The guards admit they refused to accommodate Plaintiff based solely on their
admitted and incredibly ignorant disbelief that a young male who could walk had any need for
accommodation, and admit openly mocking Plaintiff for requesting accommodation.

CMS guards admit in prior sworn testimony that upon arrival at CMS Plaintiff (a)
showed photo identification to the "meet and greet" guard Lorna Allen before proceeding to the
vehicle checkpoint, (b) immediately notified guard Anne Williams that he had a spinal cord
disability that prevented him for lifting the hood of his vehicle without risking injury, and (c)
requested that Williams lift the hood of his vehicle for him. CMS admits that Plaintiff complied
with all other security measures and that the written Federal Protective Service (FPS) policy for
vehicle inspections at CMS required the guards to lift the hood for all visitors[1].

Plaintiff filed a scathing written complaint the day after the incident demanding an
apology and corrective action from CMS for denying him access to a scheduled meeting between
his employer and CMS due to his disability. Plaintiff was a lobbyist for the American Speech

---

[1] Tape recorded telephone conversation with FPS officer Jerry Bartgis on or about June 21, 2004 proved this policy
was in effect on December 5, 2001 (as pled at ¶ 53.)

Language Hearing Association who had attended 55-60 events at CMS over 10 years without incident. CMS admits Plaintiff was always polite and complaint with agency security measures.

B.     Plaintiff's medical records document that he suffers from a severely crippling genetic disorder affecting major organs.

Since a spinal cord injury in 1994, Plaintiff has suffered from **ankylosing spondylitis** (AS), a genetic and crippling inflammatory disorder that affects the spine and major organs such as the heart, lungs, liver, and eyes. AS naturally fuses together the spinal vertebrae, preventing mobility and weakening the spine to the point that discs easily herniated or rupture.

As a result, at the time of the incident Plaintiff was under physician order not to lift more than five pounds and had documented joint dysfunction in nine separate vertebrae, two bulging discs, and constant pain. Furthermore, he suffered from severe muscle spasms, inflammation, and spinal instability which prevented him from immediately returning to a seated position after sitting down. For these reasons, Plaintiff understandably asked officer Williams to lift the hood of his vehicle for him, an accommodation that had always been politely granted by officers on Plaintiff's prior lobbying visits to CMS (and in fact was required by written policy.)

C.     Defendants retaliated against Plaintiff's written complaint demanding corrective action for denying him access to CMS based on disability.

One week after Plaintiff's above-referenced complaint and demand for corrective action, Defendant Mount issued petty offense summons in an unpostmarked envelope, trying to make it appear as if they were sent the date of the incident (though he later admits they were not.) He ridiculously attempted to belatedly claim his mocking of Plaintiff's disability and refusal to accommodate were due to "terrorist threats" by Plaintiff. However, no two officers could ever get their story straight on what those threats were and officer Bettina Gibson was proven to have fabricated her report as depositions proved she was never on the scene.

Such claims of terrorist threats have been repeatedly discredited by Mount's peers and superiors. Not only did the above witnesses admit Mount never claimed any threats on the date in question, the U.S. Attorney found them non-credible in refusing to file a charge. U.S. Magistrate Beth Gesner even states in her last ruling that such threats were not credible and given "no weight."

Contractors Eric Chase and Anne Williams admit Plaintiff made no terrorist threat of any kind during the incident, nor did any officer claim that he did so or take any action indicative of any threat. Chase also admits Plaintiff never defied any directive to leave, and all officers admit he repeatedly showed photo identification—contrary to Defendants' continued assertions.

D.    Defendants engaged in pattern of retaliation against similarly situated complainants

As set forth in Plaintiff's Complaint, retaliation against complainants of mistreatment is the *modus operandi* of CMS security personnel. CMS security was found by a federal arbitrator to have fabricated incident reports against CMS employee Doug Godesky, and found by CMS officials to have even fabricated reports against one of their own, John Rudolph.

Defendants' do not contest these facts. Nor do they contest that Plaintiff was treated differently than these individuals, even though Plaintiff merely demanded reasonable accommodation for disability while both Godesky and Rudolph brought dangerous weapons into CMS (when directed not to.) Unlike Plaintiff, neither Godesky or Rudolph were charged with any criminal offense nor are either banned from entering CMS or contacting Federal personnel. Defendants have never explained how Plaintiff can be a "terrorist threat" for demanding disciplinary action against ignorant, poorly-trained contractors, while those who imminently threaten the lives of CMS employees are not.

E.    Defendants' subsequent retaliation against Plaintiff for demanding prosecution of CMS and FPS officials forms the basis of this litigation

Defendants are so brazen in their belief that Courts will allow them to do whatever they want after 9-11 that they actually attempted to again retaliate against Plaintiff in January 2005 for the exercise of protected speech.

As detailed below, Plaintiff sent copies of his correspondence with newspaper reporters, petitions, and other letters which all demanded the criminal prosecution of Defendant Mount and other Federal officers responsible for fabricating incident reports or criminal allegations against persons complaining of legitimate mistreatment. Plaintiff identified three Federal officers who were sentenced to Federal prison for 18-24 months in California after a videotape proved they fabricated reports to falsely claim a motorist assaulted them. Plaintiff provided reporters and Federal employees with documentation showing Mount and peers had engaged in analogous retaliation and deserved the same prison terms.

In response, Defendants attempted to scare Plaintiff into silence by issuing a bogus telephone harassment charge that failed to meet any of the elements of the statute. It is this unlawful and cowardly retaliation that is the direct cause of this litigation.

F.    Defendants' Statement of Facts regurgitate wild assertions that were repeatedly proven to be criminal fabrications by personnel covering-up for their lack of disability sensitivity training.

Defendants show ultimate contempt for the Court by submitting a Statement of Facts regurgitating the same wild assertions repeatedly proven in prior proceedings to be criminal fabrications. As shown above, Defendants routinely engage in such fabrication in order to cover-up for the abuse and incompetence of poorly-trained, low-wage security contractors.

In particular, Defendants' attempts to cry "terrorism" in order to justify blatant violations of civil liberties after 9-11 has been hallmark not just of CMS, but of the Bush Administration.

This repugnant appeal to the dark days of McCarthyism[2] has been repeatedly repudiated by the
U.S. Supreme Court, and even the Fourth Circuit Court of Appeals (oft considered the most
conservative court in the land.)

Defendants' shameful attempts to ban Plaintiff from contacting or "do business with"
CMS personnel on the basis that he is a terrorist threat to the agency remains absurd.  Despite
such obvious lack of credibility (including the above-referenced repudiation by a federal
Magistrate), Defendants' thumb their nose at this Court not only by attempting to regurgitate
them in their Motion, but by again attempting to retaliate against Plaintiff for continuing to seek
prosecution of Mount and others responsible for such criminal fabrications.

## III.    BACKGROUND INFORMATION

At pg. 2 of their Motion (under "Background Information"), Defendants make
unsubstantiated claims about prior court judgments that do no relate to the facts or basis of this
litigation.  Anyone recently completing the bar exam is acutely aware that prior court judgments
are hearsay under Federal Rule of Evidence (FRE) 801.  None of these represent convictions for
felonies or misdemeanors involving dishonesty, nor do they contain any guilty plea or party
admission.  Thus, they meet no hearsay exception under FRE 803 and must be excluded as
evidence in this case per FRE 802.

These prior rulings were based upon that court's remarkable and erroneous insistence that
Plaintiff was not disabled and therefore not entitled under Section 504 to reasonable
accommodation.  The court substituted its recorded hatred towards disabled plaintiffs in place of
the clinical determination of four physicians who wrote letters stating that Plaintiff was disabled
as he was "substantially impaired" in major life functions.  Since that time, a pre-eminent

---

[2] Plaintiff does not make this claim lightly.  He received the highest grade in his Advanced Administrative Law class
for research documenting how the Bush Administration's tactics in response to 9-11 not only resemble but far
exceed the unlawful abuses relied upon during the era of McCarthyism.

physician in the field diagnosed Plaintiff's condition as ankylosing spondylitis, a condition that

even the federal Social Security Disability program recognizes in its Listing of Impairments as a

severely crippling disability. Because this diagnosis removes all dispute as to whether Plaintiff

is disabled, these prior rulings are rendered totally irrelevant, even if they were not hearsay.

As set forth below, this litigation is based on a new set of offenses by Defendants or

changes in Plaintiff's status and thus are not re-litigating matters previously adjudicated.

## IV.    ARGUMENT

A.    Plaintiff sufficiently states a claim for relief for malicious prosecution (Count One) as his
pleadings meet the elements of the offense and Defendants cannot claim immunity
because they lacked any probable cause

Actions Plaintiff pled against Defendants Mount and Shingler meet the elements for

malicious prosecution (Count One) since Defendants lacked any probable cause to file a

harassment charge against Plaintiff because,

(1)    Plaintiff documented at ¶ 36 that Officer Matthew Pinardi, acting at the direction

of Def. Mount, admitted in a tape-recorded telephone call that he never bothered to check

the certified mail receipt to see if Plaintiff had received the January 10, 2005 letter.

Because Pinardi admits making **no effort** to first see if Plaintiff received the letter, his

issuance of the charge cannot be reasonable or based on probable cause.

(2)    The content of the supposedly offending communication represents protected

speech under the cited statute, thus probable cause can never attach.

(3)    The statutory elements of the charge require the communication to be

"anonymous" and "harassing". Discovery is required for Defendants to counter

Plaintiff's facts showing Defendants' failed to meet these elements because:

(a)    **none of his communications were anonymous** and in fact all

referenced Plaintiff or Plaintiff's case and were identified as being from Plaintiff or Plaintiff's sole proprietorship, Otologic Reimbursement Management. Given that this company name is prominently displayed at the top of all Plaintiff's faxes, Defendants willfully thumbed their nose at the courts by filing a charge that they knew did not meet the element of anonymity[3].

(b)     Plaintiff's Complaint sets forth at ¶ 43-44 that his telephone records show that between December 2001 and January 2005 he sent only 14 faxes to Defendants which Maryland and Federal case law prove do not come close to satisfying the constant, pervasive, and overbearing level of communications necessary to charge telephone harassment.

(4)     Defendants' actions meet the elements of **criminal extortion** by threatening to harm a person solely for the exercise of protected speech, in violation of the Federal Anti-Racketeering ("Hobbs") Act at 18 U.S.C. § 1951. U.S. v. Torcasio, 959 F.2d 503 (4th Cir. 1992). Probable cause can **never attach to criminal acts** by Federal officials.

Defendants' Motion deliberately makes several misstatements relating to this Count in obvious attempts to mislead this Court. First, there was only a single charge of telephone harassment under Maryland statute § 3-804 (and no charge for e-mail communications.) Second, Plaintiff's communications were not "complaining of the ban"—an ingenious attempt by Defendants to hide the truth from this Court—but instead demanded Defendant Mount's criminal prosecution for felony fabrication of witness reports in light of the 18-24 month prison terms to which Mount's peers in northern California were sentenced for similar fabrication (this included offering a $1,000 reward for his arrest and conviction.) The motive of the charge was very

---

[3] Furthermore, laws preventing anonymity are unconstitutional. Talley v. California, 362 U.S. 60 (1960).

clearly retaliation against protected speech for Plaintiff putting what Defendants termed a

proverbial "bounty" on a corrupt Federal official—the exact reason why counsel chose not to

provide this Court with a copy of the allegedly harassing communications or even identify what

communication was harassing.

Defendants have never identified what the "subsequent communication" was that violated

any statute (believed to be those cited in ¶ 32-33 of Complaint.)  This obviously must be

determined during discovery in order ascertain whether Plaintiff states a claim for relief.

1.    Plaintiff explicitly pled that Defendants Mount and Shingler sought solely to
retaliate against Plaintiff for protected speech and lacked any probable cause to
file a harassment charge

A prima facie case of malicious prosecution must include the following elements:

(1) the initiation or maintenance of a proceeding against the Plaintiff by the Defendant,

(2) termination of that proceeding favorable to the Plaintiff, (3) lack of probable cause to

support that proceeding, and (4) the Defendant's malice.

Defendant's Motion admits Plaintiff sufficiently pled elements 1, 2, and 4 (and that

Plaintiff's assertions are true.)  Defendants somehow contest only the third element, as they

claim Plaintiff did not plead that Defendants lacked probable cause to issue the harassment

charge.  This statement is bizarre, as Defendants apparently failed to read ¶ 83-91 of the

Complaint that pleads this element of malicious prosecution eight times, as follows:

83.    As set forth above, Defendant Mount did maliciously and intentionally
cause the commencement of a criminal proceeding against Plaintiff without any
probable case.
84.    As set forth above, Defendant Shingler did refuse to dismiss the charge
when Plaintiff brought forward documentation that Defendant Mount's charge
against Plaintiff lacked probable cause and was commenced solely retaliate
against Plaintiff for his public criticism of FPS.
85.    As set forth above, the U.S. Attorney's Office dismissed the charge
against Plaintiff on the basis that Defendants lacked probable cause because the
Maryland telephone harassment statute did not apply to Plaintiff's public

criticism, which is constitutionally-protected speech under all Federal or state harassment laws.

86.    Defendants knew at the time of charge that the Maryland telephone harassment statute did not apply to Plaintiff's constitutionally-protected speech and that their charge lacked merit.

87.    Defendant Mount initiated the charge solely to threaten and intimidate Plaintiff for engaging in constitutionally-protected speech by exposing Mount and FPS' fraudulent conduct.

90.    As Defendant knew the statute did not apply to Plaintiff's communications, Defendant thus lacked requisite probable cause to file a charge against Plaintiff.

91.    As Defendant acted solely out of evil motive in seeking to retaliate against public criticism, Defendant likewise lacked requisite probable cause to file a charge against Plaintiff.

Whether or not the Defendants lacked probable cause is a determination for summary judgment following discovery. Dismissal is therefore premature because the Court must first assess the nature of Plaintiff's communications to see if probable cause attached. All that is required of Plaintiff is to plead the lack of probable cause as an element of his malicious prosecution claim, which he undoubtedly does in these paragraphs.

2.    Defendants are not entitled to immunity as Plaintiff's pleadings present facts showing Defendants **admit** lacking probable cause in filing a harassment charge to deter protected speech not checking if fundamental prerequisites were met.

Federal officials are subject to individual liability for willful violations of constitutional rights. Bivens v. Six Unknown Fed. Narcotics Agents, 403 U. S., 388, 397 (1971).

Official reprisal for protected speech, as Plaintiff pled in Count 1, meets this standard as such reprisal "offends the Constitution [because] it threatens to inhibit exercise of the protected right," Crawford-El v. Britton, 523 U. S. 574, 588, n. 10 (1998) *as cited in* Hartman v. Moore, 547 U.S. ___ (2006). The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. Id. at 592; see also Perry v. Sindermann, 408 U. S. 593, 597 (1972) (noting that government may not punish a person or deprive him of a benefit on the basis

of his "constitutionally protected speech"). When the vengeful officer is federal, he is subject to an action for damages on the authority of <u>Bivens</u>, 403 U. S. at 397 *as cited in* <u>Hartman</u>.

Plaintiff sufficiently pled facts showing that Defendants are subjected to a <u>Bivens</u> action because they knew they lacked probable cause to charge people for engaging in protected speech. Their Motion <u>admits</u> he correctly alleged Defendants failed to make any effort to check if he received a "cease and desist" letter informing him that his demands for Mount's prosecution could result in criminal harassment charges, prior to issuing the charge (see subsection (3) below.) As Plaintiff pled at ¶ 46, Defendants then continued to pursue the charge even after learning this fundamental prerequisite was not met, forcing him to incur significant expense, distress, and injury for two more months until the charge was dismissed by the U.S. Attorney.

This is a critical fact that removes any immunity. Even when they knew they messed up, Defendants refused to dismiss the charge and correct their error.

3.    <u>Mount knew Plaintiff's speech was protected because he did not charge under the Federal telephone harassment statute, but instead under the Maryland statute</u>.

Judicial decisions "clearly establish" a Constitutional right for qualified immunity purposes. <u>Gallo v. City of Philadelphia</u>, 161 F. 3d 217, 220 n.4 (3rd Cir., 1998), <u>U.S. v. Lanier</u>, 520 U.S. 259, 269 (1997). Thus, judicial decisions explicitly put Mount and other Defendants on notice that they were violating Plaintiff's civil rights in filing the harassment charge.

Few rights are as settled as the right to be free from retaliatory prosecution for exercising protected speech. For example, the D.C. Circuit (relying on U.S. Supreme Court precedent) has held that retaliatory prosecution initiated solely because a plaintiff refused to release civil claims of police misconduct constitutes an actionable First Amendment wrong[4]. <u>Haynesworth v. Miller</u>,

---

[4] See also <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976) (First Amendment violations constitute serious "irreparable injury" warranting "substantial money damages") and <u>Suarez Corp. Indus. v. McGraw</u>, 202 F.3d 676 685 (4th Cir., 2000) (public officials may not retaliate against those who publicly criticize them.)

820 F.2d 1245, 1255-57 (D.C. Cir. 1987) *citing* Norwell v. Cincinnati, 414 U.S. 14, 16 (1973)

(finding first amendment violation in retaliatory prosecution for objecting to police misconduct).

Furthermore, Defendants' contention that any improper motive by Mount in filing the charge is

abrogated by probable cause is unsupported by case law. DeLoach v. Bevers, 922 F.2d 618, 620

(10th Cir. 1990) (act taken in retaliation for the exercise of a constitutionally protected right is

actionable even if the act, when taken for a different reason, would have been proper.)

Proving his contempt for these decisions, Mount tried to vindictively charge Def. with

"misuse of telephone facilities" under Maryland statute § 3-804. As Plaintiff pled in his

Complaint under Count 1, Mount's actions prove that he had full knowledge that Plaintiff's

speech was constitutionally protected, thus rendering his harassment charge improper.

This fraudulent charge was issued with full knowledge it is unconstitutional. Not only

did it directly contradict the above-referenced judicial decisions barring retaliatory prosecution

against protected speech, but the D.C. Circuit has demonstrated that all Federal and state

harassment statutes must have exception for public discourse and political speech. U.S. v. Popa,

187 F.3d 672 (D.C. Cir. 1999)(private citizens cannot be prosecuted for frequently contacting

Federal officials to protest abusive conduct of law enforcement officers[5].)

Mount's own actions show that was aware of this precedent and sought to improperly

circumvent it. Despite the fact that Plaintiff's communication involved Federal officials such as

Mount, he did not charge under the Federal telephone harassment statute at 47 U.S.C. § 223.

Nor did he charge under the Maryland e-mail harassment statute at §3-805 even though the vast

majority of Plaintiff's communications was via e-mail. This odd behavior resulted because the

---

[5] All of Plaintiff's communications with Defendants meet the protections of Popa. The Popa court held that the
defendant had every lawful right to contact the U.S. Attorney seven times in matter of days to protest police abuse,
even when he was being charged by that office. Furthermore, the defendant even had every right to use racially
charged remarks or slurs to make his point to the U.S. Attorney, an African-American.

text of both statutes <u>include the constitutionally-required exception</u> for public discourse and political speech under <u>Popa</u>. Instead, Mount desperately attempted to find a loophole by charging under the only state law that had yet to explicitly include this exception in its text[6].

Abusive application of the statute in such unintended manner would effectively criminalize any lobbyist or citizen who repeatedly contacts policymakers to demand action on public policy matters. For these reasons, <u>Popa</u> found such speech protected, regardless of whether such exception was articulated in statute. <u>Id</u>., at 672. And for these reasons, the U.S. Attorney dismissed Mount's attempted charge.

Because Mount knew of the legal standard for protected speech and willfully sought to circumvent it in order to satisfy a personal vendetta, any grant of immunity is improper.

4.  <u>Reasons for dismissal are a pre-text for retaliation, as Defendants' charge failed to meet the elements of the offense.</u>

Defendants claim the harassment charge was dismissed because of "discrepancies concerning the Plaintiff's receipt date of the letter and the date of the subsequent communication received by FPS and Defendant Mount, and also because of an error in the charging document." Such carefully worded and tortured language is an effective admission that Plaintiff's action failed to meet the elements of the offense and Defendants lacked probable cause, without the Defendants' having to actually use the words "lack of probable cause."

First, any technical deficiencies obviously are correctable without dismissing the charge. Furthermore, by admitting that Defendants issued the charge without waiting to see if Plaintiff received the "cease and desist" letter, Defendants admit that a fundamental pre-requisite to the

---

[6] Reading the entire section in context, the Assembly clearly intended the exception to apply to all forms of communication, whether by fax or e-mail. This is reinforced by § 3-803(c) stating that "this section does not apply to a peaceable activity intended to **express a political view or provide information** to others *[emphasis added]*."

charge was not met.  As a result, they admit Plaintiff's conduct was not yet sufficient to meet the elements of the offense, thereby admitting that probable cause could not yet have attached.

More damning to Defendants are the statements made by Assistant US Attorney Michael Leotta when informing Plaintiff's counsel that the charge would be dismissed.  Through discovery, Plaintiff can procure testimony from federal public defender John Chun to show that Leotta acknowledged all state harassment laws must constitutionally provide an exception for public discourse and political speech, regardless of whether such exception is explicitly stated in text.  Leotta admitted that Mount thus misapplied the Maryland telephone harassment statute to Plaintiff's public discourse, stating to Mr. Chun, "that's not what the statute is for."  Dismissal prior to discovery related to Leotta's admission is therefore premature and improper.

Furthermore, Defendants' attempt to mislead this court as to the true bases for dismissing of the charge is thus *per se* evidence of improper motive in filing the charge, namely retaliation for the exercise of protected speech.

B.     Plaintiff sufficiently states a claim for relief for abuse of process (Count 2) as absence of probable cause is not a required element, and Plaintiff sets forth that Defendants misused the judicial process for the evil motive of retaliation.

Defendants do not contest that Plaintiff states a claim for relief for abuse of process. Plaintiff pled both a malicious prosecution and abuse of process claim, because the tort of abuse of process does not require that the vengeful officer act without probable cause. Heck *v.* Humphrey, 512 U. S. 477, 483-485, and 484, n. 4 (1994) *as cited in* Hartman, 547 U.S. ___ .

Plaintiff met all elements of an abuse of process claim.  Abuse of process occurs when "process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." Jacobson v.

Thrifty Paper Boxes, 230 A.2d 710, 711 (D.C. 1967). The "critical concern in abuse of process cases is whether process was used to accomplish an end unintended by law." Morowitz v. Marvel, 423 A.2d 196, 198 (D.C. 1980), see also Heck, 512 U.S. at 486, n.5; Scott v. District of Columbia, 101 F.3d 748, 755 (D.C. Cir. 1997) ("abuse of process is the use of the legal system 'to accomplish some end which is without the regular purview of the pro-cess' " (*citing* Bown v. Hamilton, 601 A.2d 1074, 1079 (D.C. 1992)).

Defendants admit that Mount and Shingler initiated a proceeding against the Plaintiff and then maintained it even after Plaintiff produced evidence showing he did not receive the required "cease and desist" letter and that his communications did not meet the elements of the charge, as they were neither anonymous or frequent. Defendants likewise admit that the proceeding terminated in favor of the Plaintiff after the U.S. Attorney dismissed the charge for failing to meet the required elements or prerequisites. .

Lastly, Defendants admit that Plaintiff's sufficiently pled improper purpose, as Plaintiff's Complaint documented that Defendant Mount acted with evil motive consistent with his longstanding pattern of retaliation against complainants. This includes Mount mailing Plaintiff petty offense notices in an unpostmarked envelope **one week after** Plaintiff's written complaint to CMS threatening litigation, promising to issue a press release, and demanding disciplinary action.

While "the gist of the tort [of malicious prosecution] is . . . . commencing an action or causing process to issue without justification," abuse of process involves "misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." Heck, 512 U.S. at 477. Because Plaintiff's pleadings document that Mount filed the bogus harassment charge for the unlawful motive and

purpose of scaring Plaintiff into abandoning his right to engage in protected speech,

Plaintiff sufficiently articulates the distinction between a malicious prosecution and abuse

of process claim.   Therefore, both claims should properly be maintained.

C.    Plaintiff sufficiently pled that actions of Defendants McClellan and Shingler in their official capacity continues to violate Plaintiff's rights to constitutional due process (both procedural and substantive) under Count 3 because Plaintiff's disability gives him a liberty and property right to equivalent access to CMS provided to persons without disabilities, and Plaintiff now works in a job and profession requiring CMS access.

Plaintiff pled at ¶ 8 of his Complaint that he has a severe physical condition meeting all

Federal definitions of disability.  He also pled at ¶ 70 that he now works in a job requiring access

to CMS (as does any job in his healthcare lobbyist profession.)

As a result, Plaintiff pled under Count 3 that these factor provide him both a liberty and

property right under Federal disability law to receive the reasonable accommodation necessary to

access Federal buildings that was denied him by Defendants.  He documented at ¶ 100 that this

liberty and property right gives him the right to the equivalent access to Federal buildings as

provided to those without disability, as required by the Equal Protection Clause under the Fifth

Amendment.  He also repeatedly documented throughout Count 3 that Defendants' denied him

any opportunity to appeal, request a hearing, or receive any other procedural due process related

to its deprivation of the constitutionally-required access.

Therefore, it is unclear how Defendants can assert Plaintiff has not sufficiently pled a

constitutional due process claim, as Defendants fail to explain further.  Defendants' bald

assertion that Plaintiff's claim is meritless is simply premature and improper absent discovery.

D    Plaintiff's Complaint further sufficiently pleads a due process claim because Defendants' official actions deprive him of equal protection of the laws (Count 4).  Plaintiff was deprived of the equivalent due process given other persons Plaintiff cited in substantially similar circumstances, including one who did not prevail in any judicial or quasi-judicial proceeding.

Count 4 of the Complaint documents that two employees were not criminally charged for bringing loaded handguns and military knives into CMS. The conduct of these two employees was exponentially more serious than anything alleged of Plaintiff, as weapons are a direct and immediate threat to the health and safety of employees.

Plaintiff and the two CMS employees were charged with identical petty offenses. Yet the government dismissed the charges against persons endangering lives with weapons, while pursuing charges against a disabled man demanding to speak to a supervisor regarding refusal of his right to reasonable accommodation.

Such an incredulous dichotomy demonstrates the government's sole purpose in pursuing charges was infantile retaliation for Defendant's scathing written complaint the day after the incident demanding disability sensitivity training and promised to issue a press release and file litigation. It proves Defendants' treatment of Plaintiff to be solely a matter of ego and not security. Furthermore, the evidence demonstrates Defendants violated the Equal Protection Clause under the Fifth Amendment as they failed to treat similarly situated individuals in a like manner due to its hatred and intolerance of legitimate complaints of disability discrimination.

Defendants' primary basis for seeking dismissal of this equal protection claim is their bald assertion at pg. 13 of their Motion that such blatantly disparate treatment was due to the other parties prevailing in a quasi-judicial proceeding. This assertion is wholly false.

CMS security official John Rudolph never prevailed in any quasi-judicial or judicial proceeding. Internal memos show CMS officials concluded prior to any hearing that incident reports were fabricated involving his possession of a hunting knife on CMS property in defiance of security directives. Thus, no hearing was ever held.

Douglas Godesky did prevail in a quasi-judicial proceeding when a Federal arbitrator ruled in June 2004 that CMS contractors had fabricated witness reports falsely alleging misconduct. However, CMS not only attempted to deprive him of that hearing, but sought court action to invalidate the ruling. Godesky only received such a hearing since such due process was required pursuant to the collective bargaining agreement for Federal employees.

Since CMS is simply attempting to dispute facts and merits of Plaintiff's claim, dismissal is premature and improper at this stage. Discovery is required to resolve these discrepancies and clearly show that Plaintiff was treated in a disparate manner apart from Godesky and Rudolph, despite the imminent threat of harm they posed to CMS employees. Because they are proven to have misrepresented this matter to the Court, dismissal is likewise improper.

Defendants' secondary attempt at pg. 19 of their Motion to claim Plaintiff has no right to equal access to CMS because it is not a "public forum" is wholly unsupported and irrelevant. The Equal Protection clause dictates that Plaintiff be given the same right of access as other persons with or without disabilities, regardless of the status of the forum. If Plaintiff is denied access to a Federal building because he is refused accommodation that is granted to persons CMS believes to be disabled, then equal protection is violated. Likewise, if Plaintiff is denied access to a Federal building due to lack of accommodation, while CMS grants access to non-disabled visitors, then equal protection is violated. It does not matter if that building is the U.S. Capitol or the Central Intelligence Agency. Whatever access is provided to other similarly situated persons must also be provided to Plaintiff.

Furthermore, CMS' status as a public forum is a matter to be determined through discovery. Thus, dismissal is premature. Government officials cannot pick and choose whom to admit based on individual dislikes and vendettas.

E.     Plaintiff's Complaint documents over seven written demands for constitutional due process and disciplinary action to which Defendants McClellan and Shingler refused to respond in their official capacity, thereby violating the Administrative Procedures Act (Count 5).

Contrary to assertions by Defendants, the APA does apply to actions Defendants took in their official capacity.  The U.S. Supreme Court specifically held that:

> "Any person adversely affected or aggrieved by agency action, including a failure to act, is entitled to judicial review thereof, as long as the action is final agency action for which there is no other adequate remedy." Heckler v. Chaney.  470 U.S. 821 (U.S. 1985).

Plaintiff meets all elements of this standard for judicial review, which is codified at 5 U.S.C. § 702.  Plaintiff documented at ¶ 71-72, ¶ 74, ¶ 109, and ¶129-130 of his Complaint that Defendants received over seven requests for agency action via certified mail or facsimile transmission and refused to respond to Plaintiff in any manner.  Plaintiff likewise showed at ¶ 131 that such failure to explain why they are or are not taking the requested action directly violates the APA at 5 U.S.C. § 555(e).  Plaintiff's claim for relief as to his APA claim (not limited to ¶ M) also seeks only declaratory and injunctive relief.

Furthermore, as detailed in subsection (G), Defendants admitted in prior litigation that CMS' action against Plaintiff (including the lobbying ban) represented final agency action for which no appeal, hearing, or other due process would ever be provided by CMS.  In their Motion, Defendants did not even contest that CMS' action represented the requisite final agency action.  Because Plaintiff thus has no remedy apart from this litigation, judicial review is proper.

Defendants absurdly assert that the claims must be dismissed because Plaintiff named them in their official capacity, and not the agencies they respectively head.  As detailed in subsection (J), 5 U.S.C. §702 of the APA applies to both agencies and employees of the agency acting in their official capacity.  Thus, Plaintiff sufficiently pled an APA claim against Defendants McClellan and Shingler, in their official capacity as heads of CMS and FPS.

F.     Plaintiff's Complaint is not a "collateral attack" on prior court rulings relating to Count 3, because those rulings [improperly] held the controversy was not ripe as Plaintiff was not disabled and not working in a job requiring CMS access.  Dismissal on this basis is premature, since Plaintiff pled that these factors have changed and are now ripe for controversy, Defendants 2005 ban presents a new issue for review, and the merits of which can only be assessed via discovery.

Defendants' allege that Count 3 of Plaintiff's Complaint are merely a "collateral attack" on prior court decision relating to the CMS lobbying ban and thus should be dismissed per *res judicata*.  However, Defendants fail to note that prior rulings merely held Plaintiff's claims were not ripe for review, as the court insisted Plaintiff was not disabled and thus had no right to accommodation, and Plaintiff had left his lobbying job to attend law school and thus had no imminent need for CMS access.   Plaintiff's Complaint documented that these two factors cited by the prior court have since changed, thereby making the controversy now ripe for review.

Plaintiff pled at ¶ 8 that his disability meets all definitions under Federal law, including the most restrictive definition used by the Social Security Administration (SSA).  Since the prior case, the disorder with which Plaintiff has suffered since 1994 was definitively diagnosed as ankylosing spondylitis, a severe and crippling genetic disorder of the spine, removing any debate as to whether Plaintiff is disabled.  Therefore, discovery is required in order for the court to review the medical documentation substantiating Plaintiff's disability.

.     Secondly, Plaintiff pled at ¶ 70 that he graduated law school in 2005 and now works in a position requiring CMS attendance.  Again, this matter requires substantiation through discovery.

Because Plaintiff's pleadings, if proven in discovery, demonstrate that this controversy in now ripe for review, dismissal is premature.  The change in these factors from prior litigation demonstrates that Count 3 is not a "collateral attack" on prior court rulings.   The lobbying ban presents on-going injury and thus on-going bases for review when critical factors change.

Furthermore, the January 2005 ban on communicating with FPS personnel was not instituted until after all prior proceedings ended and thus presents a new issue ripe for review.

G.    Plaintiff exhausted all administrative remedies, because CMS ban in 2001 was final agency action for which no remedies were available.

Plaintiff documented at ¶ 71-72, 74 that he notified Defendants of his claims in writing on at least seven occasions, and they refused to respond (much less in the six months required by 28 U.S.C. § 2675.). Plaintiff also pled that CMS refused to provide any opportunity for appeal of the lobbying ban issued against him, or any other constitutional due process (such as a hearing.)

Defendants repeatedly asserted in prior litigation that the lobbying ban was "final agency action" and no due process or other remedies would ever be available.  This was documented in a March 2003 letter they sent to U.S. District Court Judge Benson Everett Legg.  On this basis, the Judge refused to dismiss Plaintiff's prior due process claim against CMS for failure to exhaust administrative remedies, because there are no administrative remedies to exhaust.

Although the any judgments in prior proceedings are inadmissible hearsay (see Section III), party admissions clearly are not, as they meet the hearsay exception under FRE 803.  Thus, per *res judicata*, CMS' prior admission that the ban is final agency action should properly dictate that this matter has already been properly decided and dismissal on this basis is improper.

H.    Immunity from money damages for federal agency Defendants under the FTCA is not available under Counts 1-2 for lack of notice, as Plaintiff pled that Defendants McClellan and Shingler (and the U.S. Attorney) received written notice of these claims in their official capacities over 10 months prior to filing the Complaint.

Defendants incorrectly assert in their Motion that the FTCA notice requirements bar monetary damages for Plaintiff's malicious prosecution and abuse of process claims (Counts 1-2)

against the Defendants in their official capacity[7]. The FTCA notice requirements at 28 U.S.C. §

2675 state as follows:

> (a)    An action shall not be instituted on a claim against the United States for **money damages** for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, unless the claimant shall have <u>first presented the claim to the appropriate federal agency and his claim shall have been finally denied</u> by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within **six months** after it is filed shall...be deemed a final denial of the claim for purposes of this section *[emphasis added]*.

Plaintiff pled at ¶ 42-47 of his Complaint that Defendants were provided such

notice prior to March 17, 2005. Discovery will show that Defendant Shingler personally

received Plaintiff's written correspondence by facsimile on or about January 30, 2005,

and that his agency (FPS) received additional notice by facsimile on or about February 7,

2005. As far more than six months have passed since these dates, the agency's failure to

renders it a final disposition, per 28 U.S.C. § 2675.

Because the dates and nature of notice can only be ascertained through discovery,

motion for dismissal of Defendants in their official capacities is premature and improper.

If Plaintiff's allegations are proven, he sufficiently meets the FTCA notice requirements.

Even if such were not the case, the proper remedy is not dismissal, but an amended

complaint, to document the exact dates Defendants received notice.

Most importantly, Plaintiff seeks declaratory and injunctive relief on Counts 1-2

against Defendants in their official capacity. Because the FTCA notice requirement

applies only to claims for money damages, dismissal is improper.

---

[7] Defendants Mount and Shingler were also sued under Counts 1-2 in their individual capacity through a <u>Bivens</u> action, thus the FTCA does not apply.

I.    Sovereign immunity under the FTCA or *Bivens* is not available under Counts 1-2, as Defendants acted with evil motive and for the unlawful purpose of retaliation, which is outside the scope of their official duties and willfully in violation of Plaintiff's legal rights.

Defendants knew they lacked any probable cause to file a harassment charge against Plaintiff at the time the charge was filed, as shown above in subsection (A). Even after receiving a copy of the certified mail return receipt showing Defendants failed to meet the fundamental prerequisite for the charge, they continued to proceed with full knowledge their action was in violation of Plaintiff's legal rights. Therefore, they acted outside the scope of their official duties for the improper purpose of retaliation in order to deter the exercise of protected speech. Thus, Defendants cannot claim immunity, either in their individual or official capacity.

The legal standard is that sovereign immunity also does not bar suit where Federal officers acted beyond their statutory powers or in an unconstitutional manner. Smith v. Booth. 823 F.2d 94. (5th Cir., 1987); Platsky v. CIA. 953 F.2d 26 (2nd Cir., 1991), *appeal after remand* 990 F.2d 1251; and Trulock v. Freeh (4th Cir., 2001) (FBI agents individually liable for invading private, password-protected computer files of reporter in retaliation for critical press.) Immunity in these instances was removed by Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics. 403 U.S. 388 (1971), which held that whenever a Federal agent acting under color of his authority willfully violates an individual's constitutional rights, the aggrieved individual has a cause of action against that agent for damages.

Deciding whether a Federal officer enjoys qualified immunity is a four-step process. The first step is determining whether a constitutional right was violated. Siegert V. Gilley, 500 U.S. 226, 231 (1991). If so, the court must then determine whether the right at issue "was clearly established at the time an action occurred[8]." Harlow v. Fitzgerald. 457 U.S. 800, 818 (1982).

---

[8] Judicial decisions (such as Trulock) will "clearly establish" a Constitutional right for qualified immunity purposes. Gallo v. City of Philadelphia, 161 F. 3d 217, 220 n.4 (3rd Cir., 1998), U.S. v. Lanier, 520 U.S. 259, 269 (1997).

When the right is "clearly established" at the time of depravation, the qualified immunity defense must fail, unless the officer can prove extraordinary circumstances existed such that the official "neither knew nor should have known of the relevant legal standard." Id, at 818-819.

The Defendants bear the burden of proving such extraordinary circumstances. Buonocore v. Harris, 134 F. 3d 245, 252 (4th Cir., 1998). This burden is "highly difficult". McCord v. Maggio, 927 F.2d 844, 848 (5th Cir., 1991).

Defendants simply have not made any showing of extraordinary circumstances required to overcome this "highly difficult" burden. As set forth in this Reply, the rights violated by Defendants were clearly established by court rulings, Federal statutes, and the U.S. Constitution. Defendants acted without probable cause because Plaintiff's failed to meet the elements set forth in statute, especially anonymity and repetition. Defendants acted solely for the evil motive of retaliation and intimidation in order to deter the exercise of speech that was constitutionally protected per Popa. And Defendants willfully continued to proceed against Plaintiff even after learning that Plaintiff had not received the "cease and desist" letter.

At a minimum, claims of immunity are premature given that Defendants must first prove they had probable cause. Since this can only be ascertained by reviewing the nature of Plaintiff's communications during discovery, Defendants have no basis to assert immunity as this juncture.

J.     Sovereign immunity is not available as to Counts 3-5 because judicial review of final agency action is authorized by Federal law and Plaintiff seeks non-monetary relief.

Defendants cannot invoke immunity as to Counts 3-5, because these counts seek judicial review of final agency action (see subsection (E)), Defendants took such action in their official capacity and are sued in their official capacity, and Plaintiff seeks non-monetary relief.

The Administrative Procedures Act (APA) at 5 U.S.C. §702 expressly waives any immunity to the declaratory and injunctive relief sought in Counts 3-5. This provision states:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States <u>seeking relief other than money damages</u> and stating a claim that an agency **or an officer** or employee thereof acted or failed to act in an <u>official capacity</u> or under color of legal authority <u>shall not be dismissed</u> nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in such action, and a judgment or decree may be entered against the United States *[emphasis added]*."

This waiver of immunity for non-monetary relief applies to any civil action, whether or not the suit is under the APA. <u>U.S. Chamber of Commerce v. Reich.</u> 74 F.3d 1322 (D.C. Cir. 1996).

There is a general presumption that all agency decisions are reviewable under the APA, at least to assess whether the actions were "arbitrary, capricious, or an abuse of discretion." <u>Heckler</u>, at 826 *citing* <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 139-141 (1967).

The APA provides only two exceptions to judicial review (5 U.S.C. § 701). These apply only when Congress expressed intent to preclude judicial review or where the statute is drawn so courts have no meaningful standard against which to judge the agency's exercise of discretion. <u>Heckler</u>, at 826. The latter should be invoked only when the substantive law leaves the courts with "no law to apply." <u>Id</u>. *citing* <u>Citizens of Overton Park v. Volpe</u>, 401 U.S. 402, 410 (1971).

Defendants McClellan and Shingler have **not invoked either exception, nor cited any law** that either precludes review or commits this matter to agency discretion. Furthermore, this Court has several substantive laws to apply, including the First Amendment of the U.S. Constitution, the Due Process and Equal Protection Clause of the Fifth Amendment, and 5 U.S.C. § 555(e) of the APA. Therefore, Defendants fail to meet the criteria for either of two APA exceptions, and nothing precludes the Court from reviewing whether they abused their official discretion and acted in an arbitrary and capricious manner.

Defendants absurdly ask that Count 5 be dismissed because Plaintiff named them in their

official capacity, and not the agencies they respectively head. As shown above, 5 U.S.C. §702 of

the APA applies to both agencies and employees of the agency acting in their official capacity.

It explicitly states that "a claim that an agency **or an officer** or employee thereof acted or failed

to act in an official capacity or under color of legal authority shall not be dismissed nor relief

therein be denied on the ground that it is against the United States *[emphasis added]*." Thus, it is

irrelevant whether Plaintiff named Defendants McClellan and Shingler in their official capacity

as agency heads or named the specific agencies they head. Naming either the agency or agency

heads in their official capacity has the same effect under the APA.

K.    Plaintiff sufficiently pled that jurisdiction and venue lies in this district over *Bivens* claims (Counts 1-2) because unlawful actions were all taken or authorized by agency officials in Washington, DC, continues to injure Plaintiff by banning him from meetings in Washington, DC, and are proper under the joinder provisions of the F.R.C.P. since majority of Defendants and witnesses are in Washington, DC.

Defendants assert that this Court lacks jurisdiction as to Defendant Mount because he

lives and works in Maryland. This assertion is simply an incorrect recitation of civil procedure.

In cases involving multiple defendants, Rule 19 of the Federal Rules of Civil Procedure

(F.R.C.P.) authorizes the joinder of non-resident parties, so long as the Court has jurisdiction as

to other parties. Rule 19(a) specifically states:

(a) Persons to be Joined if Feasible.

A person who is subject to service of process and whose joinder will not deprive
the court of jurisdiction over the subject matter of the action shall be joined as a
party in the action if (1) in the person's absence complete relief cannot be
accorded among those already parties, or (2) the person claims an interest relating
to the subject of the action and is so situated that the disposition of the action in
the person's absence may (i) as a practical matter impair or impede the person's
ability to protect that interest or (ii) leave any of the persons already parties
subject to a substantial risk of incurring double, multiple, or otherwise
inconsistent obligations by reason of the claimed interest.

Defendants do not contest that Plaintiff's Complaint documents that it was the unlawful actions of Mount that are the direct cause of this litigation. Nor do they contest that his actions are so interwined with the claims of the federal agency defendants that complete relief cannot be accorded in his absence. In fact, Plaintiff will be unable to fully prosecute this matter against the federal agency Defendants in the absence of Mount, who will have to appear as a witness in this action (either at deposition or trial.)

For example, Mount is employed by the federal agency Defendants in Washington, DC and sought authorization from them for many of his actions in this matter. Therefore his communications with superiors clearly invokes jurisdiction as to Mount. Furthermore, the vast majority of witnesses are thus located in Washington, DC.

Defendants likewise admit that this Court has jurisdiction of the federal agency Defendants, as Plaintiff is banned from entering CMS headquarters in Washington, DC and from communicating with DHS employees in Washington, DC.

Because this Court as jurisdiction as to the federal agency Defendants, joinder is proper under F.R.C.P. to add Defendant Mount to this action in the interests of judicial economy, so that two separate lawsuits are not required for claims that are deeply intertwined among the three Defendants. Furthermore, Defendants admit that joinder is not overly burdensome for Defendant Mount who resides less than 45 minutes from the Federal courthouse in Washington, DC. Even if such were not the case, the proper remedy in this case is transfer of Defendant Mount's claims to the District of Maryland.

## V.     CONCLUSION

Plaintiff sufficiently pled the exact elements of the offenses for all Counts. When accepted as true prior to discovery, Plaintiff's allegations show that Defendants lacked probable

cause to file a telephone harassment charge against Plaintiff, thus satisfying the elements for malicious prosecution (Count 1). Plaintiff likewise shows that Defendants filed the charge for the improper purpose and effect of deterring protected speech, namely the public exposure of their criminal misconduct, thus satisfying the elements for abuse of process (Count 2).

Plaintiff's allegations further demonstrate that Defendants took final agency action in banning him from communicating with Federal agency personnel for which Plaintiff has no other administrative remedy, thereby satisfying the elements of his constitutional due process claim (Count 3). Because banning and charging Plaintiff for demanding reasonable accommodation for his disability is dramatically disparate from the Defendants' treatment of similarly situated plaintiffs who were not criminally charged for bringing loaded weapons into CMS, Plaintiff also accurately states a claim for relief under the Equal Protection Clause (Count 4.) His claim for relief under the APA (Count 5) due to Defendants' failure to respond to his repeated demands for constitutional due process also satisfies the APA standard for judicial review because it is brought against Federal agency heads in their official capacity.

Because the conduct alleged of Defendants represents final agency action or willful violations of established constitutional rights, Defendants have no basis to assert either sovereign or qualified immunity. Such immunity is not available to Defendants sued in their individual capacity under Bivens, nor to Defendants sued in their official capacity under the FTCA or APA.

While Count 3 has previously been litigated as to the CMS ban (but not the FPS ban), it is not a collateral attack on prior decisions which denied relief for lack of a ripe controversy. Plaintiff has documented that his additional evidence of disability and employment requiring CMS access now render the claim ripe for review. Furthermore, Defendants do not contest that prior decisions are hearsay, not fitting within any exception for admissibility.

Jurisdiction and venue lie within this Court as Defendants do not contest that Defendants

alleged actions were all taken or authorized by officials in Washington, DC, bars Plaintiff from

entering agencies in Washington, DC, or are proper under the joinder provisions of the F.R.C.P.

since the majority of Defendants and witnesses are within Washington, DC.

The remainder of Defendants' objections merely dispute the merits of Plaintiff's claims

and are therefore premature and improper at this stage of litigation. Discovery is required to

resolve these factual disputes, as all Plaintiff needs to establish to survive a F.R.C.P. Rule

12(b)(6) motion for dismissal are facts that provide legal claims of relief. As detailed above,

Plaintiff has more than met this standard for all five counts in his Complaint. Therefore,

Defendants' Motion to Dismiss should be wholly denied.

Respectfully submitted this 15th day of September, 2006.

Mark Hobratschk, JD, MPA, Plaintiff
2360A Newburg Lane
Safety Harbor, FL  34695
(727)-729-7776 (phone or fax)

## CERTIFICATE OF MAILING

I certify that on September 15, 2006, a true and correct copy of the foregoing was sent via
facsimile transmission to the following:

Benton Peterson, Assistant U.S. Attorney
U.S Attorney's Office
555 4th Street, N.W.
Washington, D.C.  20530    (202)-514-8780 (facsimile)

Mark Hobratschk, JD, MPA, Plaintiff